IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELENA BIANCO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE | : | NO. 07-4650 |
| CORPORATION, et al. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                 **OCTOBER  22, 2008**

      Presently before the Court is Plaintiff Elena Bianco's ("Bianco") Motion to Compel Defendant GMAC Mortgage Corporation ("GMAC") to produce for inspection the laptop that had previously been assigned to its General Counsel, Robert Patterson ("Patterson").  For the reasons set forth below, this Motion is denied.

**I.     FACTS**

      Plaintiff Bianco began working as an administrative assistant in the legal department of GMAC's Horsham, Pennsylvania office in May 2005.  At this point in time and throughout Bianco's career at GMAC, Patterson was employed as General Counsel for the company. Beginning in May 2006, Bianco asserts that she began experiencing health problems, including sores and lesions, chronic fatigue, joint pain, muscle pain, muscle weakness, lack of energy, fibers on the skin and hair, hair loss and hair breakage, stinging and biting sensations on her skin, and extreme anxiety.  These conditions and the accompanying doctors' visits caused her to begin missing time from work.  As a result of these absences, as well as other problems, Bianco became a disciplinary concern for her supervisors at GMAC.

      In November 2006, GMAC instituted a reduction-in-force ("RIF") aimed at eliminating positions in an effort to reduce costs throughout the company.  Robert Patterson was asked to

create a contingency plan, outlining the positions that would be eliminated within the legal department.  In December 2006, Patterson was asked to submit a list of employees that would be laid off in January 2007.  Patterson identified three positions to be eliminated, one of which was that of Ms. Bianco.  Ms. Bianco was subsequently laid off on January 16, 2007.

On November 5, 2007, Bianco filed a Complaint in this Court alleging claims against GMAC for discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") and for retaliation, in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").  Bianco served her First Request for Production of Documents on February 11, 2008, requesting copies of the contingency plan, the list of persons that Mr. Patterson included in his contingency plan, and any emails regarding these issues.  Bianco again requested these documents by letter dated April 24, 2008.  On June 18, 2008, GMAC informed Bianco that it had conducted a thorough search of Patterson's computer and had produced all information relevant to Bianco's request for the contingency plan.  On July 9, 2008, Bianco conducted a deposition of Mr. Patterson, whereby Patterson testified that the contingency plan and the list were drafted on and emailed from his company laptop.  On August 1, 2008, Bianco served upon GMAC a Notice of Inspection for Patterson's laptop so that the hard drive could be imaged to retrieve the contingency plan, the list of persons to be included in the RIF, and any emails attaching either of those documents.  Bianco also served a Third Request for Production of Documents on the same day.

On September 3, 2008, GMAC served its response to Bianco's Notice of Inspection, wherein it objected to the production of Patterson's laptop on the grounds of privilege, but agreed to produce all documents in its possession that were relevant to Bianco's request.  On September

5, 2008, counsel for GMAC sent a letter to Bianco's counsel containing additional documents pertaining to the contingency plan and the list of names.  On September 10, 2008, Bianco filed a Motion to Compel, wherein Bianco seeks an Order directing GMAC to produce Patterson's laptop for a forensic examination of the hard drive.

## II.  DISCUSSION

Bianco files her Motion to Compel pursuant to Federal Rule of Civil Procedure 34.  Rule 34 states:

> (a) A party may serve on any other party a request within the scope of Rule 26(b):
> > (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> > > (A) any designated documents or electronically stored information-including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations- stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
> > > (B) any designated tangible things

Fed. R. Civ. P. 34.  However, the note of the Advisory Committee on the 2006 Amendments to Rule 34 states that "[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy."  Fed. R. Civ. P. 34 advisory committee's note.  As such, Rule 34 does not grant a party "a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances."  Id.

Determining the proper scope of discovery is within the broad discretion of the trial court. Scotts Co. v. Liberty Mut. Ins. Co., No. 06-899, 2007 WL 1723509, at *1 (S.D. Ohio June 12, 2007). In deciding whether to allow a party the right to inspect another party's information system, courts have considered numerous factors, including: evidence that the defendant is withholding the requested information, evidence that the defendant is unable or unwilling to search for the requested information on its own, and the extent to which the defendant has complied with discovery requests. See id.; Calyon v. Mizuho Sec. USA Inc., No. 07-02241, 2007 WL 1468889, at *5 (S.D.N.Y. May 18, 2007); Bethea v. Comcast, 218 F.R.D. 328, 329-30 (D.D.C. 2003). "The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance." Scotts Co., 2007 WL 1723509, at *2.

Here, Bianco asserts that she has made numerous requests for the contingency plan in question, and that GMAC has refused to produce it. GMAC asserts that it has performed an extensive search of Patterson's laptop and produced all relevant information. Furthermore, GMAC argues that there is no evidence of discovery misconduct in this case, and therefore, this Court should not permit Bianco to examine the entire contents of Patterson's computer. We agree.

First, a review of the documents which GMAC has produced thus far reveals that GMAC has produced information relevant to Bianco's request. Specifically, GMAC has produced a memo sent to Patterson explaining the need for the RIF and asking Patterson and other heads of

departments to create contingency plans to implement the reduction. (Def.'s Resp., Ex. I, D1649-D1650.) GMAC also produced an email sent to Patterson explaining the goals and consequences of the RIF, as well as a document entitled "Contingency Plan Slide for RFG Legal," showing the actual budgeted amounts that the company hoped to achieve through the RIF. (Id. at D1647; D1651-D1653.) In addition, GMAC also produced an email indicating that Patterson had identified Bianco for inclusion in the RIF and stating that she was included on the list because her "[r]ecent performance rating is needs improvement. Lori Wertman worked on a Performance Improvement Plan for her before the holidays." (Def.'s Resp., Ex. J, D1655.) Patterson also testified in his deposition as to the methodology he employed in deciding who would be included in the plan and how Ms. Bianco was ultimately placed on the list. (Def.'s Resp., Ex. C, Patterson Dep.)

Furthermore, a review of the record shows no evidence of discovery misconduct in this case. GMAC has responded to all of Bianco's requests for discovery and has produced the documents mentioned above. Counsel for GMAC also certified that she has conducted a thorough search of Patterson's laptop and produced all relevant documents. At this time, this Court has no reason to question counsel's representation. As the court in Scotts Co. found, "[t]his court is loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information. Such conduct is always a possibility in any case, but the courts have not allowed the requesting party to intrude upon the premises of the responding party just to address the bare possibility of discovery misconduct." 2007 WL 1723509, at *2. Here, there is no evidence that GMAC engaged in any discovery misconduct. In the absence of such evidence, this Court declines to permit Bianco to

conduct an intrusive search that will likely lead to the disclosure of privileged and confidential information. As such, Bianco's Motion to Compel is denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELENA BIANCO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GMAC MORTGAGE | : | NO. 07-4650 |
| CORPORATION, et al. | : | |

## ORDER

**AND NOW**, this  22nd  day of October, 2008, upon consideration of Plaintiff Elena Bianco's Motion to Compel (Doc. No. 13), and the response thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE